UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMANDA MCGINNIS FLYNN,                    Case No. 1:11-cv-886
    Plaintiff,
                                          Litkovitz, M.J
    v.

STATE FARM MUTUAL AUTOMOBILE              **ORDER**
INSURANCE COMPANY,
    Defendant.

This case arises from a January 20, 2010, automobile accident in which plaintiff was a

passenger in an automobile being driven by Scott Flynn – plaintiff's then-boyfriend and present

husband. Plaintiff alleges that she was seriously injured as a result of the accident and incurred

substantial damages in the forms of medical expenses and pain and suffering. Plaintiff seeks a

declaratory judgment that Scott Flynn is entitled to coverage under two State Farm Mutual

Automobile Insurance Company (State Farm) insurance policies for the accident.

Plaintiff initially filed this action in the Hamilton County, Ohio Court of Common Pleas

naming State Farm and Scott Flynn as defendants. *See* Doc. 3. Subsequently, plaintiff's claim

against Scott Flynn was dismissed and State Farm removed this action to federal court on the

basis of diversity jurisdiction. *See* Doc. 1. This Court has jurisdiction based on diversity of

citizenship pursuant to 28 U.S.C. § 1332 as plaintiff is a citizen of Ohio, State Farm is a citizen

of Illinois, and the amount in controversy exceeds $75,000.00. *Id.*

This matter is currently before the Court on the parties' cross-motions for summary

judgment. Defendant State Farm and plaintiff, Amanda Flynn, both filed their summary

judgment motions on July 31, 2012 (Docs. 13, 17), and their responses on August 24, 2012.

(Docs. 20, 21). For the following reasons, State Farm's motion for summary judgment is **GRANTED**, and plaintiff's motion is **DENIED**.

## I. Undisputed Facts

On January 20, 2010, Scott Flynn was driving plaintiff's vehicle and plaintiff was riding in the passenger seat. (Doc. 16, Ex. A at 87-89, December 8, 2010 Sworn Statement of Plaintiff). While driving southbound on Interstate 75 from Dayton, Ohio to Lebanon, Ohio, Scott Flynn failed to brake in time and the vehicle collided with the back of a stopped semi-truck. *Id.* at 89-90. Plaintiff suffered multiple injuries as a result of the accident. *Id.* at 66-69.

There are two State Farm insurance policies at issue: (1) policy C03 3099-E30-35J, which was issued to Sallie M. Flynn (Scott Flynn's mother) on May 6, 2009 (Policy One), and (2) policy 149 7608-E13-35B, which was issued to Stephen Flynn (Scott Flynn's father) and to Scott Flynn on January 28, 2009 (Policy Two). (Doc. 13, Exs. A, B; Doc. 17, Exs. 7, 8). Plaintiff brought suit against Scott Flynn and State Farm in July 2011 asserting negligence claims against Scott Flynn and a bad faith claim[1] against State Farm, as well as a request for declaratory relief holding State Farm liable for indemnification for any debt owed to plaintiff by Scott Flynn arising from the accident. (Doc. 3). Both parties have now filed motions for summary judgment addressing the issue of whether State Farm is required to indemnify Scott Flynn under Policy One and/or Policy Two.

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled

---

[1] Plaintiff voluntarily dismissed her bad faith claim against State Farm on March 1, 2012. (Doc. 9).

to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield,* 295 F.3d at 615; *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

**III. Resolution**

Plaintiff contends that State Farm is required to indemnify Scott Flynn for damages owed to plaintiff under both Policy One and Policy Two. Conversely, State Farm asserts that Scott

3

Flynn is not covered under either policy for purposes of "non-owned car" liability. Specifically, State Farm claims Scott Flynn is not covered under Policy One due to plaintiff's status as a co-resident with Scott Flynn and his mother at the time of the accident, and he is not covered under Policy Two because Scott Flynn was not living with his father at the time of the accident and not operating a "nonowned car." Consequently, State Farm contends Scott Flynn does not meet the criteria for coverage and/or indemnification under either policy. Because there are distinct legal issues presented by each policy, it is appropriate to analyze them separately. The Court will first review Policy One.

A. Policy One

Policy One, numbered C03 3099-E30-35J, was issued to Sallie M. Flynn on May 6, 2009. (Doc. 13, Ex. A, Policy One).[2] The pertinent portion of Policy One provides that State Farm will Pay damages which an *insured* becomes legally liable to pay because of . . . *bodily injury* to others . . . caused by accident resulting from the ownership, maintenance or use of *your car* . . . ." *Id.* at 12 (emphasis in original).[3] Policy One further provides that the "liability coverage extends to the use, by an *insured*, of . . . *a non-owned car.*" *Id.* (emphasis in original). A "non-owned car" is defined, in relevant part, as "a *car* not owned by, registered to or leased to . . . any other *person* residing in the same household as *you, your spouse* or any *relative* . . . ." *Id.* at 8 (emphasis in original).

It is undisputed that Scott Flynn qualifies as an "insured" under Policy One because he was a relative of Sallie Flynn and residing with her in January 2010. It is further undisputed that

_____

[2] The contract is properly before the Court as an exhibit as State Farm attached a certified copy of Policy One as Exhibit A to its motion for summary judgment. (Doc. 13, Ex. A). *See* Fed. R. Evid. 1003.

[3] The Court's citations to the insurance policies refer to the page number of the electronically filed exhibit and not to the annotations of the policies themselves. This citation method applies to all cited exhibits, including

4

Scott Flynn was driving plaintiff's vehicle, and not his own car, at the time of accident. Consequently, in order to be eligible for liability coverage under Policy One, plaintiff's car must qualify as a "a non-owned car," *i.e.*, a car not owned by a person "residing" in the Flynn household.[4]

State Farm contends that plaintiff's car does not qualify as a "non-owned car" because plaintiff was residing with Sallie and Scott Flynn at the time of and preceding the accident. In support, State Farm cites to testimony from plaintiff and Scott Flynn demonstrating that plaintiff was sharing an apartment in Lebanon, Ohio with Sallie and Scott Flynn from August 2009 to January 2010. State Farm argues that the living arrangement between plaintiff and the Flynns demonstrates that plaintiff was a resident of the Flynn household - not a temporary or transient visitor - thus, her vehicle is not a "non-owned car" under Policy One and State Farm is not required to indemnify Scott Flynn for injuries sustained by plaintiff pursuant to the accident.

Plaintiff counters State Farm's interpretation asserting that although she was living at Sallie Flynn's apartment with Scott Flynn, she was only a temporary visitor and not a resident. Plaintiff contends that her car therefore meets Policy One's definition of a "non-owned car" and that State Farm is required to indemnify Scott Flynn for liability arising out of the January 2010 accident. In light of the parties' arguments, the inquiry before the Court is limited to whether, under Ohio law,[5] plaintiff's living arrangement with Sallie and Scott Flynn qualifies her as a

---

references to deposition testimony.

[4] The parties agree that plaintiff's car does not meet the criteria for designation as a "newly acquired car" or "temporary substitute car" under Policy One.

[5] As this matter is before the Court pursuant to its diversity jurisdiction, the Court is bound to apply the substantive law of the State of Ohio. *See Klaxon Co. v. Stentor Elec. Mfg., Co.*, 313 U.S. 487, 496 (1941). Further, the Court notes that as Policy One does not include a definition of a "resident," it is necessary to look beyond the four corners of the policy to determine whether plaintiff was a resident of Sallie and Scott Flynn's household. *Cf. Moses v. Baker*, 798 F. Supp.2d 863, 867 (E.D. Ky. 2011) (finding that policy's definition of term "resident" obviated the need to look to Ohio law to determine residency of plaintiff).

"resident" of the Flynn "household." If yes, then plaintiff's car cannot be considered a "non-owned car" under Policy One and summary judgment will be granted in favor of State Farm; if no, then State Farm is required to indemnify Scott Flynn for any liability to plaintiff arising from the accident.

The term "resident" is not defined in Policy One. The Court must therefore look to the plain and ordinary meaning of the term, unless another meaning is clearly apparent from the policy's contents. *Shear v. West*, 464 N.E.2d 545, 548 (Ohio 1984) (citing *McBride v. Prudential Ins. Co.*, 72 N.E.2d 98 (Ohio 1947)); *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 719 N.E.2d 955, 959 (Ohio 1999). Notably, the policy's lack of a definition of the term "resident" does not mean that the policy is ambiguous. *Chicago Title Ins.*, 719 N.E.2d at 959 (citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995)).

Ohio courts define a "resident" as "one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor." *Entenman v. Auto-Owners Ins. Co.*, 737 N.E.2d 119, 122 (Ohio Ct. App. 2000) (quoting *Farmers Ins. of Columbus v. Taylor*, 528 N.E.2d 968, 969 (Ohio Ct. App. 1987)). Other factors courts may consider in determining whether an individual is a household "resident" include mail delivery, storage of belongings, and the layout and use of the dwelling; yet, the primary consideration is the nontemporary nature or regularity of the living arrangements. *Am. States Ins. Co. v. Guillermin*, 671 N.E.2d 317, 321-22 (Ohio Ct. App. 1996) (in determining son was not "resident" of mother's home but a temporary and infrequent visitor, the court noted the son received mail there only for convenience purposes and the fact that son kept some clothes at residence did not support a finding that he was a "resident" given the irregular nature of his stays at the home and son's testimony that he lived elsewhere). *See also*

6

*Allstate Indemn. Co. v. Collister*, No. 2006–T–0112, 2007 WL 2821984 (Ohio Ct. App. Sept. 28, 2007); *Bell v. Currier*, No. 02 CA–10, 2003 WL 21453054 (Ohio Ct. App. June 23, 2003). Further, the Ohio Supreme Court has defined a "household" as "those who dwell under the same roof and compose a family" or "a social unit comprised of those living together in the same dwelling place." *Shear*, 464 N.E.2d at 548. Accordingly, to be considered a "resident" under Ohio law plaintiff must have lived in the Flynn household "with some regularity" at the time of the accident. *See Gerace Flick v. Westfield Nat. Ins. Co.*, No. 01 CO 45, 2002 WL 31168883, at *13 (Ohio Ct. App. Sept. 26, 2002) (citing *Farmers Ins.*, 528 N.E.2d at 969)).

State Farm argues that the undisputed facts support a holding that plaintiff was a "resident" of the Flynn "household." In support, State Farm identifies the following: (1) plaintiff had been living with Sallie and Scott Flynn for approximately five months, from August 2009 through the time of the accident in January 2010 (Doc. 14, Ex. A at 22-23, Deposition of Scott Flynn; Doc. 16, Ex. A at 30, 42, 65); (2) plaintiff moved in with the Flynns because she did not want to live alone due to an incident at her prior residence and had nowhere else to live (Doc. 15, Ex. A at 54-56, Deposition of Plaintiff; Doc. 16, Ex. A at 32-33); (3) plaintiff did not pay rent or utilities at the apartment (Doc. 14, Ex. A at 23; Doc. 16, Ex. A at 35-36); (4) plaintiff ate dinner with the Flynns four to five nights a week with Sallie Flynn preparing all meals (Doc. 16, Ex. A at 38); (5) plaintiff had her own keys to the Flynn residence and stayed there every night in a separate bedroom (Doc. 15, Ex. A at 34-35; Doc. 16, Ex. A at 34-35); and (6) plaintiff received her mail at the Flynn residence (Doc. 15, Ex. A at 47). State Farm asserts that these facts support a finding under Ohio law that plaintiff was a "resident" of the Flynn "household" at the time of the accident and, consequently, her car does not qualify as a "non-owned car" under Policy One and Scott Flynn is not entitled to indemnification. (Doc. 13 at 12-15) (citing *Thompson v.*

7

*Preferred Risk Mut. Ins. Co.*, 513 N.E.2d 733 (Ohio 1987) (holding that brother who lived with his sibling was a resident of the household despite brother's lack of intent to make household his permanent residence)).

In contrast, plaintiff argues that she was not a "resident" under Ohio law as she did not intend to remain at the Flynn household indefinitely.  In support, plaintiff cites to her sworn statements that: (1) she stored the majority of her furniture in storage during her stay with the Flynns (Doc. 16, Ex. A at 27-29); (2) she maintained exclusive control over the keys to her vehicle, Sallie Flynn never drove her vehicle, and Scott Flynn only drove it infrequently[6] (Doc. 14, Ex. A at 28; Doc. 15, Ex. A at 38-40); and (3) she had planned on moving out of the Flynn household, had been looking at apartments prior to the accident, and was scheduled to move into her own apartment the week of the accident.  *See* Doc. 15, Ex. A at 55; Doc. 16, Ex. A at 49. Citing to *Napier v. Banks*, 250 N.E.2d 417 (Ohio App. Ct. 1969), plaintiff contends her intent to move out is the crucial factor the Court should consider in determining whether she was a "resident" of the Flynn household.  As her intent was not to remain at the Flynn's indefinitely, plaintiff claims she was not a "resident" and, accordingly, State Farm is required to indemnify Scott Flynn under Policy One for injuries she sustained in the January 2010 accident.

For the following reasons, the Court finds that plaintiff was a "resident" of the Flynn residence at the time of the accident.  Consequently, plaintiff's car does not qualify as a "non-owned car" and State Farm is entitled to summary judgment on plaintiff's claims under Policy One.

---

[6] While plaintiff argues that the fact that Scott Flynn only drove her car infrequently during her stay with the Flynns supports a finding that she maintained an arms-length relationship sufficient to support a finding that she was not a "resident," the record indicates that Scott Flynn drove infrequently, not because plaintiff intended to keep their affairs separate but, rather, because she did not like the way he drove. *See* Doc. 14, Ex. A at 29.

At the outset, the Court notes that it is bound to apply the following construction doctrines when analyzing the terms of the insurance policies at issue. Interpretations of insurance policies are a matter of law for the Court. *Sharonville v. Am. Emp. Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006). Insurance policies should be construed "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988). Further, "[r]esident-relative liability exclusions have been found to be valid in Ohio as a means to prevent fraudulent intrafamilial lawsuits brought for the sole purpose of reaping a monetary windfall through an insurance policy." *Allstate Ins. Co. v. Eyster*, 939 N.E.2d 1274, 1280-81 (Ohio Ct. App. 2010) (citing cases).

The undisputed facts of this matter support a finding that plaintiff was a resident of the Flynn household at the time of the January 2010 accident. Plaintiff stayed at the household every night for five months from August 2009 to January 2010; received her mail there; and had no other dwelling. *See Thompson*, 513 N.E.2d 733 (brothers living together in same residence every night for only six months was sufficient to deem them "residents" of the same household); *American Select Ins. Co. v. Payne*, No. 67051, 1995 WL 126607 (Ohio Ct. App. Mar. 23, 1995) (finding that sister living with sibling three months a year who kept clothes and toiletries at the residence and received her mail there was a "resident"); *Ziegler v. Workman*, No. 93-28, 1994 WL 140755 (Ohio Ct. App. Mar. 30, 1994) (evidence that son stayed at parent's home only a quarter of the time but received mail there was sufficient to declare him a "resident"). In addition, plaintiff frequently ate meals with the Flynns lending further support to the conclusion that she was a resident of the Flynn household. *See Still v. Fox*, 644 N.E.2d at 1134 (a

9

"household" is "a social unit comprised of those living together in the same dwelling place."). Further, the fact that plaintiff did not pay rent or utilities indicates that she was not staying at the Flynn's residence as an arms-length "renter" but, rather, lived with the Flynns as a "resident." *See Midwestern Indemn. Co. v. Craig*, 665 N.E.2d 712, 714 n.3 (Ohio Ct. App. 1995) (affirming trial court's finding that son who was depending on parents for rent and utilities was "resident").

While plaintiff's intent was to move out of the Flynn household, this does not negate a finding that she was a "resident" in light of the above facts. Plaintiff's intent is only one of several factors the Court must consider in making this finding, and it is not the most important. *See Guillermin*, 671 N.E.2d at 321 (most important factor in determining whether person is "resident" is the nontemporary nature of the residency). Moreover, the fact that plaintiff intended to move does not demonstrate that she was a "transient or temporary" guest and not a "resident." Plaintiff's stays at the Flynn household were not infrequent or irregular: she stayed their every night, paid no rent, and regularly shared meals with the Flynns as a social unit. The fact that she intended to move eventually does not alter her status as a "resident" of the household during the pertinent time period.[7] Consequently, in consideration of the pertinent factors, the undersigned finds that plaintiff's uninterrupted, five-month long co-habitation with the Flynns is enough to deem her a "resident" of the Flynn household.

---

[7] To the extent that plaintiff asserts that, under *Napier v. Banks*, her intent should be the controlling factor in determining if she was a "resident," her argument is not persuasive. First, in the forty years since *Napier* was decided Ohio courts have expanded the determination of residency to include consideration of a variety of factors, only one of which is intent. *See Guillermin*, 671 N.E.2d at 321 (citing cases). Further, *Napier* is factually distinguishable. In *Napier*, the court held that a woman staying with her parents for approximately one month due to financial problems following a divorce was not a "resident." *Napier*, 250 N.E.2d at 418-19. Here, on the other hand, plaintiff lived with Sallie and Scott Flynn for approximately five months. Plaintiff further argues that *Motorist Mutual Ins. Co. v. Zetts*, No. 78 CA 43, 1979 WL 207193 (Ohio Ct. App. 1979), compels a finding that she was not a "resident." The Court disagrees. In *Zetts*, the Ohio court held that a brother living with his sister was a temporary resident given facts demonstrating that the brother was only living with his sister temporarily while he waited for another residence to open up. *Id.* at *2. *Zetts* is distinguishable as the brother was paying for rent. Further, as there is no indication of the length of time the *Zetts* brother resided with his sister in the case, the undersigned declines to

Lastly, to the extent that plaintiff seeks to support her argument with testimonial evidence from State Farm representative Lisa Hannaman that the policies provide coverage despite its plain language, *see* Doc. 17 at 9, such testimony is barred by the parol evidence rule. *See Sherock v. Ohio Muni. League Joint Self Ins. Pool*, No. 2003-T-0022, 2004 WL 605105, at *4 (Ohio Ct. App. Mar. 29, 2004) ("Where a term is ambiguous, parol evidence is admissible to interpret, but not to contradict, the express language of the contract.").

For these reasons, the Court finds that State Farm is entitled to summary judgment on plaintiff's claim for declaratory relief regarding Policy One.

B. Policy Two

Policy Two, numbered 149 7608-E13-35B, was issued to Stephen Flynn, Scott's father, and Scott Flynn on January 28, 2009. (Doc. 13, Ex. B, Policy Two). The language of Policy Two is identical to that stated above in connection to Policy One. Yet, for the purposes of the instant motions for summary judgment, the pertinent language involves the definitions of insured individuals for non-owned cars. Policy Two provides that an insured individual for purposes of a non-owned car is "[1] the first ***person*** named in the declarations; [2] his or her ***spouse***; [and] [3] their ***relatives*** . . . ." *Id.* at 17 (emphasis in original). The policy defines "***person***" as "a human being" and "***relative***" as "a ***person*** related to ***you*** or ***your spouse*** by blood, marriage or adoption who resides primarily with ***you***." *Id.* at 14 (emphasis in original).

State Farm asserts that Scott Flynn does not have liability coverage under Policy Two for "non-owned cars" because he was not "the first person named in the declarations" and not residing primarily with his father at the time of the accident. Thus, State Farm contends it is not

---

adopt its holding in light of the instant facts.

required to indemnify Scott Flynn for any damages to plaintiff for which he is liable by the plain and unambiguous language of Policy Two. Further, State Farm argues that even if Scott Flynn were considered "the first person named in the declarations," and therefore an "insured," he would still not be entitled to coverage because Policy Two, in relevant part, limits coverage to use of a "non-owned car" which does not include a car owned by a person residing in the same household. State Farm supports its arguments with the plain language of Policy Two as well as Scott Flynn's testimony that he was not residing with his father at the time of the accident. *See* Doc. 13, Ex. B.

In contrast, plaintiff contends that Policy Two does not specify who the "first person named in the declarations" is, whether it be Stephen or Scott Flynn, and that because Scott Flynn paid the premiums on a vehicle covered by Policy Two he is entitled to coverage. (Doc. 17 at 12). Plaintiff further argues that Ms. Hannaman's testimony supports a finding that Scott Flynn, as the owner of the vehicle covered by Policy Two, is the first person named in the declarations. (Doc. 20 at 9) (citing Doc. 17, Ex. 6 at 3-4, Excerpts from Ms. Hannaman's Deposition). Specifically, Ms. Hannaman testified that her "best definition" of a "first named insured" was that it is the individual who is the sole owner of the insured vehicle. (Doc. 17, Ex. 6 at 4). As Scott Flynn was the owner of the insured vehicle under Policy Two, plaintiff contends that he is the "first named insured" and, consequently, State Farm is required to indemnify him for any liability resulting from the accident. Lastly, plaintiff argues that Policy Two is ambiguous as it fails to define "first named insured" or explicitly list Scott Flynn or Stephen Flynn as the "first named insured," and this ambiguity should be construed against State Farm.

As Policy Two is a written contract, the Court must "not give the contract a construction other than that which the plain language of the contract provides." *Aultman Hosp. Ass'n v. Cmty.*

*Mut. Ins. Co.*, 544 N.E.2d 920, 924 (Ohio 1989). Here, the plain language of Policy Two provides that only the "first person named in their declarations" and their "relatives" are covered for liability resulting from use of a "non-owned car." (Doc. 13, Ex. B at 6). The parties do not dispute the fact that Scott Flynn was not living with his father at the time of the accident and, thus, does not qualify for coverage as a "relative." Accordingly, the only remaining issue is whether Scott or Stephen Flynn is the "first person named in the declarations."

The certified copy of Policy Two includes a page identified as the "Declarations Page." *See* Doc. 13, Ex. B. Under the terms of the contract, the first person named in the declarations is entitled to coverage for use of "non-owned cars." *Id.* at 6. On the "Declarations Page," Policy Two lists the following under the caption "NAMED INSURED":

> Flynn, Stephen P & Scott
> 3178 Blueacres Dr Apt 2
> Cincinnati OH 45239-6118

*Id.* Notably, the declarations page does not designate a first named insured but simply provides that "Flynn, Stephen P & Scott" are the named insured. The undersigned finds that the lack of designation of a first named insured creates an ambiguity which must be construed in favor of plaintiff. *See State Farm Mut. Auto. Ins. Companies v. Queen*, 685 P.2d 935, 937 (Mont. 1984).

In *Queen*, the Montana Supreme Court was faced with this exact issue and was required to determine who the "first named insured" was in a State Farm insurance policy listing two names connected by an ampersand. The seven justices were unable to agree as to whether the policy listed a "first named insured," which was deemed illustrative of the contract's ambiguity. *Id.* at 937.[9] Specifically, the majority stated that the practice of coupling the first names of the

---

[9] The *Queen* court noted that State Farm could have cured this ambiguity in a number of ways, including listing the names of the individuals rather than grouping them together. *Id.* However, despite having knowledge for

insured individuals indicated "an intention on the part of State Farm to grant no preference to one of the individuals as a first-named insured entitled to coverage on non-owned automobiles." *Id.*

Here, Policy Two's listing of "Flynn, Stephen P & Scott" similarly indicates an intention to not give preference to Stephen or Scott over who is entitled to coverage on non-owned vehicles as the "first named insured." As Ohio law requires that ambiguities in insurance contracts are to be drawn in favor of the insured, the undersigned finds that Scott and Stephen Flynn are equally entitled to Policy Two's coverage. *See King*, 519 N.E.2d at 1383.[10] Nevertheless, this does not entitle Scott Flynn to coverage for the January 2010 accident given the above finding that plaintiff's car does not qualify as a "non-owned car."

Similar to Policy One, Policy Two provides that the "liability coverage extends to the use, by an ***insured***, of . . . ***a non-owned car***." (Doc. 13, Ex. B at 17). As plaintiff resided with Scott Flynn at the time of the accident, her vehicle does not qualify as a non-owned car. Consequently, Scott Flynn is not entitled to coverage for the injuries sustained by plaintiff. As State Farm is not required to indemnify Scott Flynn for any debt owed to plaintiff arising out of the January 2010 accident, summary judgment in favor of State Farm as to Policy Two is appropriate.

---

almost thirty years that courts deem this ambiguous, State Farm has not altered their practice.

[10] The Court recognizes that the Fifth District Ohio Appellate Court held in an unreported case that a plaintiff was not entitled to underinsured motorist benefits because he was "not the first person named in the declarations . . . ." *Zerby v. State Farm Auto Ins. Co.*, No. 2003CA341, 2004 WL 1465734, at *2 (Ohio Ct. App. June 28, 2004). However, the *Zerby* plaintiff was a police officer and member of the Fraternal Order of Police, insured under a State Farm commercial automobile policy, who was injured in an auto accident while driving a police vehicle in the scope of his employment. *Id.* at *1. The undersigned finds that *Zerby* is inapt as it involved a commercial vehicle insurance policy and an injury sustained during the course of the plaintiff's employment whereas, here, Policy Two does not cover commercial vehicles and Scott Flynn was not acting in the scope of his employment at the time of the January 2010 accident giving rise to plaintiff's injuries. More importantly, the policy in *Zerby* identified no individual as the named insured in the declarations, but only the organization of the Fraternal Order of Police. *Id.* at *2.

14

## IV. Conclusion

For these reasons, defendant's motion for summary judgment (Doc. 13) is **GRANTED** and plaintiffs' motion for summary judgment (Doc. 17) is **DENIED**.  This matter is **DISMISSED**.

IT IS SO ORDERED.

Date: 3/12/13

Karen L. Litkovitz
United States Magistrate Judge